# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4073-01-CR-C-SOW |
| | ) | |
| ROBERT JOSEPH SMART, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Following a hearing on the matter, defendant Robert Joseph Smart was found to be presently suffering from a mental disease or defect rendering him incompetent to understand the nature and consequences of the proceedings against him and to assist properly in his defense. He was committed to the custody of the Attorney General, pursuant to 18 U.S.C. § 4241(d)(1), for a reasonable period to attempt to restore him to competence. Defendant was transported to the Federal Medical Center in Butner, North Carolina, and a forensic evaluation[1] was performed. His treatment team at the Federal Medical Center included Jason Cohen, M.A., a predoctoral psychology intern; Carlton Pyant, Ph.D., a staff psychologist; and Mark Cheltenham, M.D., a staff psychiatrist.

In a report submitted on January 7, 2008, the treatment team opined that defendant does not present an imminent danger to himself, others, or the property of another while in his current state of incarceration. They reported he is not gravely disabled, but remains incompetent to stand trial due to his mental illness. Defendant refuses to voluntarily accept the recommended medication as a form of treatment. As a result, his treatment team and the Government requests the court to authorize involuntary administration of antipsychotic drugs, with judicial oversight, pursuant to <u>Sell v. United States</u>, 539 U.S. 166 (2003).

---

[1]A.F. Beeler, Complex Warden at the Federal Medical Center referred to the evaluation as a competency restoration study.

On January 9, 2008, an evidentiary hearing[2] by video-conferencing was held in Jefferson City, Missouri, and Butner, North Carolina. Defense counsel, Troy Stabenow, traveled to the Federal Medical Center in Butner and was physically present with defendant Smart during the entire hearing. Also present in the video-conferencing room in North Carolina were Carlton Pyant, Ph.D., and Mark Cheltenham, M.D. Counsel for the Government, Jim Lynn, was present with the undersigned in the courtroom at the United States Courthouse in Jefferson City, Missouri. The proceedings were audio recorded, and at the request of defendant, a transcript was prepared.

Counsel consented to the hearing being held by video-conferencing and defendant Smart voiced no objections. The court found that while the issue of involuntary medication is before the court, it is in defendant's best interests to continue housing him in a facility where he is receiving appropriate medical and mental health treatment. It was not in his best interests to transport him for this hearing to a local county jail in Missouri where consistent and ongoing treatment could not be provided. The goal was to provide a speedier decision on the issue of involuntary medication and to keep defendant housed in a physically and psychologically healthier environment.

At all times during the hearing, the court could simultaneously see and hear defendant, defense counsel and the two witnesses. Defendant and his counsel had direct, face-to-face personal confrontation with all witnesses. Likewise, those individuals could simultaneously see and hear each other, the undersigned, counsel for the Government, and the court reporter. Drs. Pyant and Cheltenham were called by the Government and sworn as witnesses.

Drs. Pyant and Cheltenham testified that the forensic report submitted to the court (see Doc. 32) accurately reflects the facts known to them and their opinions with regard to defendant Smart's mental state and ability to be restored to competence. The witnesses were examined by counsel for the Government, and cross-examined by counsel for defendant.

---

[2]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

**Findings of Fact**

Defendant Smart has been charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In October 2006, defendant's mother contacted local authorities in Callaway County, Missouri, because she was concerned that her son was armed, mentally unstable and delusional. In early November, deputies visited defendant at his residence and he admitted to owning two firearms. He was indicted, arrested and has remained in custody since December 15, 2006.

For reasons set forth in previous orders, defendant was found to be mentally incompetent to stand trial, and was committed to the custody of the Attorney General. On July 9, 2007, defendant was admitted to the Federal Medical Center in Butner, North Carolina, (1) to attempt to restore him to competence, (2) for an evaluation of whether there is a substantial probability that in the foreseeable future he would attain the capacity to proceed to trial, and (3) for an evaluation of whether commitment is necessary for an additional reasonable period of time to attain capacity or until the pending charge is disposed according to law, whichever is earlier.

While at the Federal Medical Center in Butner, defendant has been housed in an open housing unit. He was involved in one fight, but has not posed a threat to himself, others, or the safe and secure operation of the facility. He has managed his personal hygiene without assistance, maintained adequate nutritional practices, and his delusional beliefs have not interfered with the treatment of medical conditions. His treatment team does not consider him to be gravely disabled secondary to medical or psychiatric pathology, and the team does not believe he meets the criteria for involuntary administration of antipsychotic drugs for reasons other than to restore him to competence to stand trial. Without the administrative of antipsychotic drugs, his team does not believe he will be restored to competence in the foreseeable future.

Defendant's mental health history indicates he has been committed for mental health treatment on several occasions, but he currently denies any history of mental illness or treatment. The records show that twice while answering charges for three counts of property damage, he was deemed not competent to proceed. He was then committed to Fulton State Hospital in Fulton, Missouri, between October 10, 2002, and October 10, 2003, and between February 9, 2004, and March 24, 2005, and restored to competency during those times.

In conversations with his evaluators at Butner, defendant has expressed his belief that he has been kidnaped, has no real federal charges pending, the undersigned is not a real judge, and the courthouse in Jefferson City, Missouri, is not a real courthouse. He believes his treatment team will be prosecuted for keeping him at the institution.

It is reported[3] that his mood is full-range and his affect is restricted and often mood-incongruent. He is psychotic with delusions of grandeur and delusions of persecution. His thought process is disorganized and he exhibits a deficit in logic. He is capable of repeating information but has difficulty retaining new information and integrating it with information he has already stored. His speech is disorganized and marked by loose associations and tangentiality. He lacks the ability to filter irrelevant information. He maintains a low profile at the institution and generally chooses activities he can do alone.

He has been diagnosed as suffering from schizophrenia, undifferentiated type. Schizophrenia is defined as a "constellation of signs and symptoms associated with impaired occupational or social functioning." Characteristic symptoms include "a range of cognitive and emotional dysfunctions that include perception, inferential thinking, language and communication, behavioral monitoring, affect, fluency and productivity of thought and speech, hedonic capacity, volition and drive attention." (Doc. 32 (quoting Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision by the American Psychiatric Association).)

Smart's mental condition prevents him from having a factual or rational understanding of the criminal proceedings. He fails to appreciate that this is a real criminal case, and he believes he will be released in the near future. His condition prevents him from consulting with his attorney or taking an active role in his defense, and he frequently does not believe he has an attorney representing him.

His treatment team opines that there is a substantial probability Smart's competence can be restored in the foreseeable future if he is treated with psychotropic medication. Without

---

[3]Examples of defendant's comments or beliefs are set forth in the forensic report to support the conclusions reached by the treatment team. See Doc. 32.

4

medication, the team does not believe he is likely to attain the ability to appreciate the nature and consequences of the proceedings against him or the ability to assist his attorney.

## Discussion

The Government has requested authorization to involuntarily treat defendant Smart with psychotropic medications to restore his competency to proceed to trial. Prior to considering that request, however, the court must determine "if forced medication is warranted for a *different* purpose, such as the purposes set out in Harper related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." Sell v. United States, 539 U.S. 166, 181-82 (2003) (referencing Washington v. Harper, 494 U.S. 210 (1990)).

Here, defendant Smart's treatment team has opined that the purposes set out in Harper do not apply. In his current status of confinement, he has not exhibited symptoms which make him a danger to himself, to others, or to the property of others, and there is no indication that his health is gravely at risk. Thus, the Government has not sought permission to forcibly medicate defendant for those purposes.

In certain circumstances, the Constitution permits the Government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in an effort to render him competent to stand trial. Those circumstances, however, should be rare and the required standard is fairly stringent. See Sell, 539 U.S. at 180.

First, the "court must find that important governmental interests are at stake." Id. Second, involuntary medication must "*significantly further* those concomitant state interests." Id. at 181. Third, involuntary medication must be "*necessary* to further those interests." Id. And finally, the administration of the drugs must be *"medically appropriate*." Id. The parties do not dispute that the third and fourth factors are present, and that rendering Mr. Smart competent would further the Government's interests.

The first issue, whether important governmental interests are at stake, was briefed by the parties after the conclusion of the hearing, and the only real issue in this case is whether restoring competency would significantly further important governmental interests. In Sell, the Court stated there is an important governmental interest in bringing to trial a defendant accused of a serious crime. That is so because the criminal law seeks to protect "the basic human need

5

for security." The importance of the Government's interests, however, may be lessened by special circumstances, and so the facts must be considered in each case. Id. at 180.

The Government asserts possession of a firearm by a convicted felon is a serious offense, and that the maximum term of possible imprisonment of ten years supports that conclusion. The Government notes one of the purposes of the criminal statute is to reduce the risk to society that individuals previously convicted of crimes will engage in violent acts. United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000).

Smart initially asserts he has not been charged with a serious crime because the alleged crime was not against either persons or property. He distinguishes the felon-in-possession cases cited by the Government because they include other circumstances or offenses that justify treating possession of a firearm as a serious offense.

Defendant Smart does not address the circumstances surrounding his arrest or his prior conviction. Shortly before his arrest in this case, shotgun shells and rifle casing were found on the ground in front of his residence and he told officers he had been shooting at burn barrels in front of his house. His mother, who lived in the vicinity, called authorities because she was afraid her son posed a threat to others, including herself. Defendant's conviction in 2005 was for first degree property damage, and he has a documented history of long-term mental health problems.

The court finds defendant has been charged with a serious offense, as that phrase is used in Sell, once the facts of the case are evaluated. The analysis does not end there, however, because the likely sentence must be considered in evaluating the Government's interests in forced medication. United States v. Thrasher, 503 F. Supp.2d 1233, 1237 (W.D. Mo. 2007).

The Government's interest in bringing defendant to trial is diminished in this case because of the sentence he likely will receive if convicted after being rendered competent. The parties basically agree that defendant would face a guideline range of 21 - 27 months of confinement if convicted after trial. If forced medication is authorized and 1) defendant regains competency, 2) the criminal proceedings reach the stage at which defendant could plead guilty, and 3) an expedited presentence investigation report is prepared, it is very possible defendant will receive a sentence no longer than the time served.

6

Defendant has already been confined for more than one year and the medication process is expected to take at least three to four months after it is authorized. It can take longer in individuals, like defendant, who have had previous episodes. After his competence is restored, he still has to be returned to Jefferson City, Missouri, and tried. If found guilty after a trial or a plea, a presentence investigation report is required. The time required for the process, when combined with the time defendant has already been confined, is likely to result in a sentence to time served. If that occurs and defendant is released, the Government will have another conviction, but will immediately have to deal with defendant's dangerousness through civil commitment proceedings.

Furthermore, defendant Smart has previously been restored to competency on two occasions and has failed to maintain competency. He denies he has a mental condition and refuses to take medication for it. Thus, the probability of his choosing to remain competent seems less likely, in light of this history. In his prior state criminal proceedings, he was institutionalized twice and rendered competent twice before he was able to enter a plea and bring his criminal proceedings to a close. Thus, there is some concern he will refuse to continue the medications to maintain his competency after being released from the Federal Medical Center, and there is a good chance he will not continue to be competent at the time of his trial.

Defense counsel has suggested that defendant is unlikely to plead guilty by reason of insanity if restored to competency, because that plea would probably result in a longer term of confinement than if he pleads guilty to the charge, or is found guilty at trial.

The Government clearly has a legitimate interest in holding defendant in custody to protect the public and to enforce the criminal laws, but has a lesser interest, in circumstances such as these, in having an additional conviction. Defendant already has a significant criminal history, and an additional felony conviction would give the Government little it does not already have. It will merely delay the inevitable; that of dealing with defendant on a civil commitment.

If the court does not authorize forced medication, defendant will be held pending a dangerousness assessment, pursuant to 18 U.S.C. § 4246. Evidence has been presented which suggests that defendant is a danger to himself and others if released in his current condition, and his treatment team has opined that his condition will not improve without medication. Thus, there is a likelihood that defendant will be held indefinitely at an appropriate mental health

facility and that his release would be preceded by medical evaluations and administrative or judicial processes.

Civil commitment is not a substitute for a criminal trial, but it does reduce the risks that generally occur when an individual is released without punishment after committing a serious crime. Sell, 539 U.S. at 180. In this case, it may also protect the community and the defendant for a longer time than would be likely if medication is authorized and defendant proceeds to trial.

The forensic report prepared by the treatment team sets forth in detail the information relevant to the other Sell considerations. In the team's opinion, the administration of medication is substantially likely to render defendant competent to stand trial, and medication is the appropriate treatment for defendant's condition. The report identifies the medication which the team recommends, the dosage, and the proposed management of potential side effects. The team states that alternative, less intrusive treatments which are available are unlikely to be effective in achieving the same results. The court has been presented with no evidence which challenges the appropriateness of the proposed medication or the treatment protocol, or evidence which presents alternate, less intrusive treatment to achieve the same result.

Thus, the ultimate issue in this case is whether the Government's interest in rendering defendant competent to stand trial is substantial and outweighs defendant's constitutionally protected liberty interest in refusing to take antipsychotic medication. Having considered the matter under the unique circumstances of this case, the court is not persuaded that forcible medication is constitutionally justified.

For these reasons, it is

RECOMMENDED that the Government's motion requesting the court to authorize forcible medication of defendant Smart to render him competent to stand trial be denied.

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 27th day of February, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

9